# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| STATE MECHANICAL SERVICES, LLC, | |
| Plaintiff, | Case No. 17-cv-5950 |
| v. | |
| NES EQUIPMENT SERVICES CORPORATION d/b/a NES RENTALS, NES RENTALS HOLDINGS, and UNITED RENTALS (NORTH AMERICA), INC., | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

In this putative class action, Plaintiff Tartan Construction, LLC[1] alleges that Defendants NES Rentals, NES Holdings, and United Rentals charged two "illegitimate" fees as part of their standard rental agreements for heavy equipment. [39] ¶ 3. Plaintiff claims that these fees breached the rental agreements, unjustly enriched Defendants, and violated the Illinois Consumer Fraud and Deceptive Trade Practices Act (ICFA). *Id.* Defendants moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. [26]. For the reasons explained below, this Court grants Defendants' motion.

## I. The Complaint's Allegations

Defendants rent heavy equipment to industrial construction customers through a standard rental agreement. [39] ¶ 23. Along with a rental fee,

---

[1] Although Tartan did not ask to update the case caption, Tartan replaced State Mechanical Services, LLC as Plaintiff when Tartan filed the second amended complaint in December 2017. [39]. In this opinion, "Plaintiff" refers to Tartan.

1

Defendants charge two other fees: (1) an "environmental fee"; and (2) a fee for a "limited damage waiver" (LDW). *Id.* ¶ 25. Defendants do not disclose to their customers how they calculate the two additional fees. *Id.* ¶ 28.

Plaintiff says that Defendants misrepresent the environmental fee as a means of recovering the costs of handling and disposing of waste fluids, when in reality the amount of the environmental fee bears no relation to any such costs. *Id.* ¶ 34. The rental agreement describes the environmental fee as follows:

> Customer acknowledges that it shall be charged a per item, per invoice environmental fee for the handling and disposal of waste oil and other fluids used in connection with the operation and/or cleaning of the Equipment.

[39-1] § 18. Defendants charge a $10 per item environmental fee on every invoice regardless of how much equipment a customer rented, which type of equipment the customer rented, and whether Defendant actually had to dispose of any waste fluids [39] ¶¶ 35–36. Plaintiff always timely paid the environmental fee. *Id.* ¶ 42.

The rental agreement does not contain the LDW. *Id.* ¶ 43. Instead, it refers to the LDW as follows:

> Customer acknowledges that the Company's [LDW] policy was explained at the time of entering into this Agreement. A copy of the policy is available at all branches of the Company and is available upon request. Customer acknowledges that it is responsible for the Equipment and that any [LDW] entered into is not insurance.

[39-1] § 17. Plaintiff alleges that, contrary to section 17's representations, Defendants do not explain anything about the LDW to customers when entering into rental agreements and do not make copies of the LDW available because "no such 'policy' exists." [39] ¶ 44. Defendants charge 14% of total rental costs on each

2

invoice for the LDW. *Id.* ¶ 45.

Although the LDW purportedly waives Defendants' rights to recover from renters for certain types of damage to equipment, Plaintiff says that the LDW provides little or no value to customers. *Id.* ¶ 46. Even if customers pay for the LDW, Defendants' rental agreement still obligates customers to maintain liability and property insurance for the equipment, and Defendants rarely or never waive costs under the LDW. *Id.* ¶¶ 48, 51–52. Plaintiff alleges that Defendants deceive customers into believing both that they must purchase the LDW and that the LDW confers a meaningful benefit if equipment gets damaged. *Id.* ¶¶ 49, 57. Plaintiff timely paid the 14% LDW fee on any applicable invoices from Defendants. *Id.* ¶ 61.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so Defendants have "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Thus, "threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

In evaluating a complaint, this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in Plaintiffs' favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). On a motion to dismiss, this Court may consider the complaint itself, documents attached to the complaint, documents central to the complaint and to which the complaint refers, and information properly subject to judicial notice. *Williamson*, 714 F.3d at 436.

Fraud claims under the ICFA must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Rule 9(b) demands that claimants alleging fraud "state with particularity the circumstances constituting fraud." To satisfy Rule 9(b), a plaintiff "ordinarily must describe the who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (internal quotation marks omitted). Ultimately, a plaintiff must always inject "precision and some measure of substantiation" into fraud allegations. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (internal quotation marks omitted).

### III. Analysis

As a preliminary matter, the rental agreement contains a choice-of-law

4

provision requiring that Illinois law govern any disputes arising under the agreement. [39-1] § 15. Under Illinois law, which this Court follows on choice-of-law issues when sitting in diversity, courts honor a contract's choice-of-law provision as long as the parties have a valid contract and the chosen law does not violate fundamental Illinois public policy. *See Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004). The latter requirement does not pose a hurdle here, and the parties agree that they have a valid contract, *see* [31] at 4; [33] at 12, so Illinois law controls.

Under Illinois law, this Court may interpret unambiguous contracts as a matter of law. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 821 (Ill. 2005). In construing a contract, this Court must focus on ascertaining and giving effect to the parties' intent. *Highland Supply Corp. v. Ill. Power Co.*, 973 N.E.2d 551, 558 (Ill. App. Ct. 2012). Also, Illinois law instructs this Court to interpret contract terms according to their "plain and ordinary meaning." *Barth v. State Farm Fire & Cas. Co.*, 886 N.E.2d 976, 982 (Ill. 2008).

### A. Voluntary Payment Doctrine

Defendants argue that the voluntary payment doctrine bars all of Plaintiff's claims. In Illinois, a plaintiff cannot recover a payment by claiming illegality when the plaintiff paid the money voluntarily, "with knowledge of the facts" and under the payee's "claim of right to the payment." *King v. First Capital Fin. Servs. Corp.*, 828 N.E.2d 1155, 1170 (Ill. 2005). Defendants' theory has several problems.

First, the voluntary payment doctrine is an affirmative defense. *See La.*

*Firefighters' Ret. Sys. v. N. Trust Invs., N.A.*, No. 09-cv-7203, 2015 WL 1281493, at *5 n.3 (N.D. Ill. Mar. 17, 2015). The Federal Rules of Civil Procedure do not require a complaint to anticipate or "plead around" all possible defenses, so this Court may not dismiss the complaint for failing to address the voluntary payment doctrine. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

Second, Plaintiff alleges that Defendants misrepresented the true nature of the fees they collected from Plaintiff and other customers. *See* [39] ¶¶ 87–100. Thus, drawing inferences in Plaintiff's favor, *Iqbal*, 556 U.S. at 678, Plaintiff lacked "knowledge of the facts" when it paid the fees, rendering the voluntary payment doctrine inapplicable at this stage, *King*, 828 N.E.2d at 1170.

### B. Count One: Breach of Contract

Plaintiff claims that NES Rentals and United Rentals breached their contracts with Plaintiff and other proposed class members by: (1) charging an "environmental fee" completely untethered to the actual costs of disposing of waste fluids from rented equipment; and (2) charging a fee for the LDW when the fee "bears no relation to the risk of loss or damage to the equipment" and the alleged waiver does not offer any value to customers who pay for it. *See* [39] ¶¶ 62–68. To state a breach of contract claim, Plaintiff must allege that: (1) the parties have a valid and enforceable contract; (2) Plaintiff performed under the contract; (3) Defendants failed to comply with a duty imposed by the contract; and (4) that failure to comply injured Plaintiff. *See Nielsen v. United Servs. Auto. Ass'n*, 612 N.E.2d 526, 529 (Ill. App. Ct. 1993).

### 1. Environmental Fee

Defendants argue that Plaintiff's claim fails as to the environmental fee because the rental agreement does not say that the fee corresponds to their costs for handling waste fluids. [27] at 6. This Court agrees.

Section 18 of the rental agreement defines the environmental fee, stating:

> Customer acknowledges that it shall be charged a per item, per invoice environmental fee for the handling and disposal of waste oil and other fluids used in connection with the operation and/or cleaning of the Equipment.

[39-1] § 18. This Court finds section 18's language unambiguous, and so must interpret the terms according to their plain meaning. *See Barth*, 886 N.E.2d at 982. That section simply says that Defendants charge a per item, per invoice fee *for* handling waste fluids; it does not say that the environmental fee corresponds to Defendants' costs for handling waste fluids. Indeed, the word "costs" does not appear anywhere in section 18, and the fee's "per item" description indicates that Defendants charge a standard fee not tailored to the cost of individual clean-up efforts. Thus, even if the environmental fee has no connection to Defendants' environmental costs, Defendants did not breach any contractual duty by charging the fee. *See Nielsen*, 612 N.E.2d at 529. This Court dismisses Count One with prejudice as to the environmental fee allegations.

### 2. LDW Fee

Defendants argue that Plaintiff's claim fails as to the LDW fee because Plaintiff fails to allege any damages resulting from the alleged breach. [27] at 8. This Court agrees that the claim fails, although for a different reason.

7

The rental agreement's only mention of the LDW says:

> Customer acknowledges that the Company's [LDW] policy was explained at the time of entering into this Agreement. A copy of the policy is available at all branches of the Company and is available upon request. Customer acknowledges that it is responsible for the Equipment and that any [LDW] entered into is not insurance.

[39-1] § 17. The rental agreement also contains an integration clause, titled "Entire Agreement: Amendment and Waiver," which provides:

> This Agreement and all Exhibits attached hereto and incorporated herein by reference . . . contain the entire agreement between the parties with respect to the subject matter and supersede any previous understandings or agreements, whether written or oral, with the exception of any credit agreement between the Company and the Customer.

[39-1] § 13.

An integration clause like section 13 demonstrates the parties' intent to limit their contractual agreement to the four corners of the contract. *See Highland Supply*, 973 N.E.2d at 558. The unambiguous language of section 17 bolsters that conclusion. Section 17 merely acknowledges that the LDW policy exists; it does not demonstrate any intent to incorporate that policy into the contract. *See, e.g., Kogan v. Scandinavian Airlines Sys.*, 253 F. Supp. 3d 1022, 1025 (N.D. Ill. 2017) (explaining that incorporation must be "clear and specific" and merely referring to another document does not suffice to incorporate it into the contract).

Essentially, Plaintiff alleges that Defendants agreed to provide a meaningful benefit through the LDW, and instead offered a sham product that never relieved customers of liability. [39] ¶ 50. Maybe so, but the rental contract that Plaintiff provided to this Court does not express any such agreement. Under the parol

evidence rule, because the rental agreement contains an integration clause, Plaintiff may not base a breach of contract claim upon a separate agreement that the parties allegedly reached during contract negotiations but ultimately did not include in the contract itself. *See PharMerica Chi., Inc. v. Meisels*, 772 F. Supp. 2d 938, 951 (N.D. Ill. 2011) (citing *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 (7th Cir. 2002)).

At most, section 17 creates a duty for Defendants to make the LDW policy available at their branch locations. Even if Defendants breached that duty by not making the policy available, Plaintiff does not allege any damages arising from that specific breach. *See generally* [39]. Without alleging an injury, Plaintiff fails to state a claim for breach of contract. *See Nielsen*, 612 N.E.2d at 529. This Court dismisses Count One without prejudice as to the LDW fee allegations.

### C. Counts Two and Three: Unjust Enrichment

Plaintiff, on behalf of a proposed class, claims that NES Rentals and United Rentals unjustly enriched themselves by collecting the LDW fee (Count Two), and that NES Holdings and United Rentals unjustly enriched themselves by collecting the environmental fee and LDW fee (Count Three). [39] ¶¶ 69–86. To state a claim for unjust enrichment, Plaintiff must allege that Defendants "unjustly retained a benefit" to Plaintiff's detriment, and that Defendants violate "fundamental principles of justice, equity, and good conscience" by keeping the benefit. *Saletech, LLC v. E. Balt, Inc.*, 20 N.E.3d 796, 808 (Ill. App. Ct. 2014).

9

1. **Environmental Fee**

Under Illinois law, an unjust enrichment claim fails when "the claim rests on the breach of an express contract." *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. 2006) (citing *Guinn v. Hoskins Chevrolet*, 826 N.E.2d 681, 704 (Ill. 2005)). Plaintiff runs squarely into this roadblock on the environmental-fee theory. Plaintiff alleges the breach of an express contract containing the environmental fee in Count One, cites the contract throughout the complaint, and attaches a copy of the contract to the complaint. *See* [39]; [39-1].

Plaintiff argues that, because it offers Count Three "in the alternative," the claim must go forward at the motion-to-dismiss stage. [31] at 12. Of course, Rule 8 allows inconsistent pleadings. *See Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 597 (7th Cir. 2012). But if the parties do not dispute a contract's existence, "a claim for unjust enrichment necessarily fails" and a plaintiff cannot offer it in the alternative. *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 797 (N.D. Ill. 2010) (applying Illinois law and dismissing a similar claim with prejudice).

Plaintiff admits that "a valid, enforceable agreement exists" between Plaintiff and NES Rentals. [31] at 4. United Rentals bought NES Rentals in January 2017, and so could only be liable on this claim as NES Rentals' successor. *See* [39] ¶¶ 1, 10 ("Plaintiff makes no claims on behalf of itself or others for rental directly from United Rentals."). Where an unjust enrichment claim against NES Rentals would "necessarily" fail because a valid contract exists, *Hickman*, 683 F. Supp. 2d at 797, a successor-liability claim against United Rentals necessarily fails too, *see Chi. Truck*

*Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995).

Similarly, the claim against NES Holdings—NES Rental's parent company—fails because Plaintiff makes no specific allegations of unjust enrichment against NES Holdings. In other words, Plaintiff seeks to make NES Holdings liable as NES Rental's parent corporation. A parent corporation may be liable for a subsidiary's actions if the parent exercises enough control and direction over the subsidiary that a court may properly pierce the parent's corporate veil. *See IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) (collecting cases). But when the subsidiary has no liability, the parent also has no liability. *See id.* Accordingly, this Court dismisses Count Three with prejudice to the extent Plaintiff's theory of liability depends upon the environmental fee.

### 2. LDW Fee

On the record before this Court, the parties' express contract does not incorporate the LDW policy, as discussed above. Thus, no express contract governs the parties' relationship as to the LDW, *cf. Guinn*, 826 N.E.2d at 704, so an unjust enrichment claim regarding the LDW fee does not "necessarily" fail, *Hickman*, 683 F. Supp. 2d at 797.

That said, Plaintiff's LDW unjust enrichment claim fails here in tandem with its ICFA claim (discussed below). Illinois law reflects some uncertainty over whether unjust enrichment can be an independent cause of action. *Compare Raintree Homes, Inc. v. Village of Long Grove*, 807 N.E.2d 439, 445 (Ill. 2004)

11

("Here, plaintiffs have no substantive claim grounded in tort, contract, or statute; therefore, the only substantive basis for the claim is restitution to prevent unjust enrichment."), *and Peddinghaus v. Peddinghaus*, 692 N.E.2d 1221, 1225 (Ill. App. Ct. 1998) (disagreeing with the contention that "Illinois does not recognize an independent cause of action for unjust enrichment"), *with Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 2012) ("Unjust enrichment is not a separate cause of action that, standing alone," justifies an action for recovery.).

Faced with ostensibly conflicting precedents, the Seventh Circuit suggested this approach:

> Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust. What makes the retention of the benefit unjust is often due to some improper conduct by the defendant. And usually this improper conduct will form the basis of another claim against the defendant in tort, contract, or statute. So, *if* an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.

*Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (emphasis added).

Naturally, other courts in this district follow *Cleary*. *See, e.g.*, *Muir v. Nature's Bounty, Inc.*, No. 15-cv-9835, 2017 WL 4310650, at *6 (N.D. Ill. Sept. 28, 2017) (allowing an unjust enrichment claim to survive because the related ICFA claim survived); *Stevens v. Interactive Fin. Advisors, Inc.*, No. 11-cv-2223, 2015 WL 791384, at *16 (N.D. Ill. Feb. 24, 2015) (explaining that the plaintiff's unjust enrichment claim "stands only to the extent his underlying tort and contract claims stand"); *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 924 (N.D. Ill. 2013)

12

(holding that an unjust enrichment claim remained viable because the underlying ICFA claim survived a motion to dismiss). Here, Plaintiff's unjust enrichment claim depends upon the same conduct that forms the basis of its ICFA claim: the misrepresentations that allegedly deceived Plaintiff as to the true nature of the fees and made it unjust for Defendants to retain the money they collected for those fees. *See* [39] ¶¶ 69, 78, 87 (incorporating identical factual allegations to support Counts Two, Three, and Four). Considering *Cleary* and its progeny, this Court likewise ties the fate of Plaintiff's unjust enrichment claim to Plaintiff's ICFA claim. Thus, this Court dismisses Count Two, and dismisses Count Three as to the LDW fee.

### D. Count Four: ICFA

Plaintiff claims that Defendants violated the ICFA by deceiving customers as to the true nature of both the environmental fee and the LDW fee. [39] ¶¶ 87–100. To state a claim under the IFCA, Plaintiff must allege—with enough specificity to satisfy Rule 9(b)—that: (1) the defendant carried out deceptive business practices; (2) the defendant intended that Plaintiff rely on its deception; (3) the deception occurred in commerce; (4) Plaintiff suffered actual damage; and (5) the defendant's deception proximately caused Plaintiff's damage. *Aliano v. Louisville Distilling Co., LLC*, 115 F. Supp. 3d 921, 929 (N.D. Ill. 2015) (citing *Avery*, 835 N.E.2d at 850).

Here, Plaintiff's ICFA claim fails because Plaintiff does not allege the "who, what, when, where, and how of the fraud" with the requisite particularity. *Pirelli*, 631 F.3d at 441–42 (internal quotation marks omitted). Plaintiff alleges that Defendants made numerous "misrepresentations" about the environmental and

13

LDW fees, [39] ¶ 96, but each allegation implicates "Defendants" as a group, *see, e.g.*, *id.* ¶ 97. To satisfy Rule 9(b) in this case (which alleges a fraud based upon a misrepresentation theory), Plaintiff would need to specifically allege who made "the misrepresentation, the time, place, and content of the misrepresentation," and how a defendant communicated the misrepresentation. *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014). Under that standard, Plaintiff's generalized assertions about "Defendants" paint with such a broad brush that they cannot sustain Plaintiff's ICFA claim. Indeed, any allegation that "lumps all defendants together" and lacks "any detail" about who did what fraudulent activity necessarily fails to satisfy Rule 9(b). *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990).

Plaintiff argues that its allegations about "unfair" behavior do not need to satisfy Rule 9(b). [31] at 10 n.10. True in theory, but not true here. *See Camasta*, 761 F.3d at 737. Although Plaintiff adds "language of unfairness" to a few allegations, that language does not change the fact that Count Four rests upon a foundation "entirely grounded in fraud under the ICFA." *Id.* Plaintiff challenges Defendants' various alleged misrepresentations about the fees not because those misrepresentations were unfair, but because they deceived and defrauded Plaintiff as to the true nature of the fees. Thus, Rule 9(b) applies to Count Four, and Plaintiff fails to meet its requirements. This Court dismisses Count Four.

IV. **Conclusion**

This Court grants Defendants' motion to dismiss [26]. This Court grants the

motion with prejudice as to the environmental fee portions of Counts One and Three. This Court grants the motion without prejudice as to the other portions of Counts One and Three, and as to Counts Two and Four. Plaintiff may replead the claims dismissed without prejudice if it can do so consistent with its obligations under Federal Rule of Civil Procedure 11; failure to correct the deficiencies identified here may result in dismissal with prejudice.

The Clerk is directed to correct the case caption by removing State Mechanical Services, LLC and adding Tartan Construction, LLC as Plaintiff. The case remains set for a status hearing on 5/22/2018 at 9:45 a.m. in Courtroom 1203.

Dated: May 14, 2018

Entered:

_____
John Robert Blakey
United States District Judge